FILED
IN CLERKS OFFICE

2005 FEB 22 P 4:07

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DISTRICT COURT
DISTRICT OF MASS.

|  |  |
|---|---|
| GUCCI AMERICA, INC. | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 04-12567 (WGY) |
| LESLIE COHEN, ALLLUXURYBRANDS.COM, and GLOBAL NETWORKS, USA, LLC | ) |
| Defendants. | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT LESLIE COHEN'S MOTION TO DISMISS, OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**

**I.**

**INTRODUCTION**

This case is little more than an attempt by Gucci America, Inc. ("Gucci") to use its financial and legal "muscle" to put a small Internet retailer of luxury women's clothing, Global Networks, USA, LLC ("Global"), out business because Global has in the past sold "gray market" Gucci goods at a discount—a legitimate practice, but one which Gucci intensely dislikes.

Gray market Gucci goods are genuine Gucci products, that are typically sold by Gucci in Asian countries at prices dramatically less than what Gucci sells similar goods for in the United States. Because of this price disparity, a number of companies purchase Gucci's Asian goods, in Asia, and import them to the United States for resale. Two such importers are CityModa.com ("CityModa") and MetroLuxury.net ("Metro"), both located in California. Gucci dislikes the importation into the United States of its genuine products

Feb-22-2005 11:17am   From-Cislo & Thomas            3106568457           T-494   P.006/029   F-432

originally sold in Asia, because the resale of such genuine goods often occurs at a steep discount, which Gucci apparently believes affects its profit margins.

Where does Global fit into this picture? Global is a very small California Limited Liability Company that is owned and operated by Ms. Leslie Cohen ("Cohen"). (Cohen Decl. ¶ 2.) Global operates an Internet store or website known as AllLuxuryBrands.com. (*Id.*) Global sells women's apparel and accessories via its website. Some of the products sold by Global have been Gucci products. (*Id.*) Global has purchased all of its Gucci products from either CityModa or Metro, both of whom expressly warrant on their websites that their Gucci products are authentic. (Cohen Decl. ¶¶ 2-3.) Global relies upon the representations and warranties of CityModa and Metro that the Gucci products Global purchases are in-fact authentic goods. (Cohen Decl. ¶ 3.)

Global's business model is straightforward. Global advertises products, which prior to the start of this lawsuit included Gucci products, on its AllLuxuryBrands.com website. (Cohen Decl. ¶ 4.) Global neither imports nor maintains an inventory of any products itself. (*Id.*) Upon receiving orders for products, Global in turn purchases the desired goods from other vendors. (*Id.*) As stated above, in the case of Gucci products, these vendors were CityModa and Metro. (*Id.*) These vendors ship products directly to Global, who in turn reships the products to its customers. (*Id.*)

How did the instant lawsuit arise? Gucci alleges that the Gucci products imported or sold by CityModa and Metro are actually fake or counterfeit products. Thus, per Gucci, because Global purchased its Gucci products from CityModa and Metro, it too sold fake or counterfeit Gucci products and thereby should be severely punished, regardless of Global's lack of knowledge or intent. Global possesses no information upon which to form a belief as to the truth of falsity of Gucci's allegations. (Cohen Decl. ¶ 5.) However, even if Gucci's allegations ultimately prove to be true, Global is still nothing more than an *innocent* infringer.

In an effort to cooperate with Gucci, Global voluntarily removed all advertising regarding Gucci products from its website and ceased all purchases of products from

CityModa and Metro. (Cohen Decl. ¶ 5.) Nevertheless, Gucci continues to pursue this lawsuit for no apparent reason other than to put Global and its owner Cohen out of business.

Part of Gucci's strategy to put Global and Cohen out of business appears to include forcing Global and Cohen to defend in Massachusetts, a forum 3000 miles distant from Global and Cohen's home forum in the Central District of California. The Central District of California is the forum where all of the allegedly infringing sales by Global occurred and where all of the transactions between Global and CityModa and Metro (both also California residents) occurred.

As will be fully discussed below, Cohen entirely lacks contacts with Massachusetts, while Global also lacks any contacts with Massachusetts other than two isolated sales in the forum. Therefore, this case should be dismissed, at the very least as against Cohen, for lack of personal jurisdiction and improper venue, or in the alternative, venue should be transferred to the Central District of California.

## II.

### LEGAL STANDARD FOR EXERCISING JURISDICTION

Per First Circuit law, a two-prong inquiry governs the determination of whether a court may properly exercise personal jurisdiction over an out-of-state defendant. *Sawtelle v. Farrell*, 70 F.3d 1381, 1387 (1st Cir. 1995). First the defendant must be within the reach of the long-arm statute of the state within which the district court sits. *Id.* Second, the court's exercise of jurisdiction must comply with the precepts of federal due process as delineated in *International Shoe Co. v State of Wash.*, 386 U.S. 310, 66 S.Ct. 154 (1945), and its progeny. *Id.*

///
///
///

## III.

## LEGAL STANDARD FOR A MOTION TO DISMISS FOR LACK OF JURISDICTION

In establishing a district court's jurisdiction over a defendant, the plaintiff bears the burden of demonstrating that the forum state's long-arm statute has been met and that the exercise of personal jurisdiction comports with the strictures of due process. *Ticketmaster-New York v. Alioto*, 26 F.3d 201, 206 (1st Cir. 1994). Ordinarily, a plaintiff cannot rest upon its pleadings but is obliged to produce evidence of specific facts establishing jurisdiction. *Mass. Sch. of Law*, 142 F.3d 26, 29 (1st Cir. 1998). When evaluating whether the plaintiff has made a prima facie showing of personal jurisdiction, in the absence of an evidentiary hearing, the district court must construe all factual disputes in the pleadings and affidavits in the light most favorable to the plaintiff. *Akro Corporation v. Ken Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995).

## IV.

## ANALYSIS OF MASSACHUSETTS' LONG ARM STATUTE IS SUBSUMED BY THE CONSTITUTIONAL DUE PROCESS STANDARDS

Because the Supreme Court of Massachusetts has interpreted that state's long-arm statute "as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States," *Automatic Sprinkler Corp. of Am. v. Seneca Foods Corp.*, 361 Mass. 441, 280 N.E.2d 423, 424 (1972); *accord Tatro v. Manor Care, Inc.*, 416 Mass. 763, 625 N.E.2d 549, 553 (1994), the analysis need go no further. In such a case, pursuant to First Circuit procedural law, the Massachusetts' long-arm statute is complied with if the requirements of due process are met. *Richard A. Daynard v. Ness, Motley et al.*, 290 F.3d 42, 52 (1st Cir. 2002) ("When a state's long-arm statute is coextensive with the outer limits of due process, the court's attention properly turns to the constitutional standards.").

4

## V.

### DEFENDANT COHEN LACKS SUFFICIENT MINIMUM CONTACTS WITH MASSACHUSETTS SUCH THAT AN EXERCISE OF JURISCTION BY THIS COURT WOULD VIOLATE TRADITIONAL NOTIONS OF FAIR PLAY AND SUBSTANTAL JUSTICE

The Supreme Court in *International Shoe* and its progeny established a two-part test for establishing whether the exercise of jurisdiction comports with due process. *Jet Wine & Spirits, Inc. v. Bacardi & Co. Ltd.*, 298 F.3d 1, 7 (1st Cir. 2002). First, the defendant must have sufficient minimum contacts with the jurisdiction. *Id.* Second, the exercise of jurisdiction must be reasonable and fair. *Id.*

## VI.

### COHEN LACKS SUFFICIENT MINIMUM CONTACTS FOR THIS COURT TO EXERCISE GENERAL JURISDICTION

Where a defendant's contacts are continuous and systematic, due process permits the exercise of general jurisdiction even where the cause of action has no relation to those contacts. *Phillips Exeter Acad. v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 288 (1st Cir. 1999), citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980).

In the instant case, Cohen *does not* in any individual capacity:

- conduct business in Massachusetts (Cohen Decl. ¶ 6);
- have agents, sales representative or distributors of any kind in Massachusetts (Cohen Decl. ¶ 6);
- directly market any products, via any advertising medium, to consumers in Massachusetts (Cohen Decl. ¶ 6);
- use Massachusetts as a transshipment point for products (Cohen Decl. ¶ 6.);
- own or lease any real estate in Massachusetts (Cohen Decl. ¶ 6);

Lastly, Cohen is not licensed to do business in Massachusetts. (Cohen Decl. ¶ 6).[1]

In sum, Cohen entirely lacks any form of continuous and systematic contacts with Massachusetts that would render her subject to general jurisdiction in this forum. Therefore, general jurisdiction is not an issue here. In this case, the question is: does Cohen have sufficient minimum contacts for this Court to exercise specific jurisdiction?

## VII.

### COHEN LACKS SUFFICIENT MINIMUM CONTACTS FOR THIS COURT TO EXERCISE SPECIFIC JURISDICTION

"In the absence of general jurisdiction, a court's power depends upon the existence of specific jurisdiction." *Mass. Sch. of Law*, 142 F.3d at 34 (1st Cir. 1998). As its name suggests, specific jurisdiction is more narrow than general jurisdiction. A court may exercise specific jurisdiction over a defendant if the cause of action arises directly out of, or relates to, the defendant's forum-based contacts. *Id.* (court must find that there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities).

Courts in the First Circuit use a three-part test to determine whether exercising specific jurisdiction would comply with the requirements of the Due Process Clause as follows: (1) the defendant must have purposely directed its activities at the forum state. (2) the cause of action must arise out of or relate to those activities; and (3) the

---

[1] Similarly, Cohen's company, Global, *does not* regularly:
- conduct business in Massachusetts (Cohen Decl. ¶ 7);
- have agents, sales representative or distributors of any kind in Massachusetts (Cohen Decl. ¶ 7.);
- directly market any products, via any advertising medium, to consumers in Massachusetts (Global does, however, operate a website which is accessible to residents of the forum) (Cohen Decl. ¶ 7.);
- use Massachusetts as a transshipment point for products (Cohen Decl. ¶ 7.);
- own or lease any real estate in Massachusetts (Cohen Decl. ¶ 7.).

Like, Cohen, Global is not licensed to do business in Massachusetts. (Cohen Decl. ¶ 7.) Thus, Global too entirely lacks any form of continuous and systematic contacts with Massachusetts that would render it subject to general jurisdiction in this forum.

6

assertion of personal jurisdiction must be reasonable and fair. *Phillips Exeter Acad.,* 196 F.3d at 288; *Mass. Sch. of Law,* 142 F.3d at 35.

### A. Cohen's Complete Lack Of Contacts Or Activities Directed Towards Massachusetts.

Addressing the first prong of the test, Cohen has no contacts with Massachusetts, much less activities purposely directed towards the forum. For example, Cohen *does not*:

- own or lease real property of any kind in the State of Massachusetts (Cohen Decl. ¶ 6);
- own any vehicles registered in the State of Massachusetts (Cohen Decl. ¶ 6);
- direct any advertising specifically to the State of Massachusetts via any advertising medium for any purpose (Cohen Decl. ¶ 6);
- engage in any business transactions of any kind in Massachusetts (Cohen Decl. ¶ 6);
- have any employees, distributors, sales representatives or agents of any kind in the State of Massachusetts (Cohen Decl. ¶ 6);
- maintain a website for any purpose which allows interaction of any kind with residents of the State of Massachusetts (Cohen Decl. ¶ 6);
- maintain an office in the State of Massachusetts (Cohen Decl. ¶ 6);
- have any telephone numbers or facsimile numbers listed in the State of Massachusetts, nor does she have an answering or message service in the State of Massachusetts (Cohen Decl. ¶ 6);
- have any mailing addresses in the State of Massachusetts (Cohen Decl. ¶ 6);
- have any bank accounts in the State of Massachusetts (Cohen Decl. ¶ 6); and
- Cohen does not regularly travel to the State of Massachusetts and has not visited the state of Massachusetts in 20 years (Cohen Decl. ¶ 6).[2]

---

[2] Similarly, Global *does not*:

**B.      Cohen Has No Contacts With Massachusetts—Therefore The Court Cannot Properly Exercise Jurisdiction.**

Cohen's complete lack of contacts with the forum, and complete lack of activities purposefully directed towards residents of the forum, renders an exercise of specific jurisdiction by this Court on these facts virtually untenable. Such an exercise would violate the constitutional purpose of requiring sufficient minimum contacts, i.e. to ensure that "non-residents have fair warning that a particular activity may subject them to litigation in the forum." *Beverly Hills Fan*, 21 F.3d 1558, 1565 (Fed. Cir. 1994).

- own any or lease real property of any kind in the State of Massachusetts (Cohen Decl. ¶ 7);
- own any vehicles registered in the State of Massachusetts (Cohen Decl. ¶ 7);
- direct any advertising specifically to the State of Massachusetts (though Global does maintain a website that may be accessed by residents of Massachusetts) (Cohen Decl. ¶ 7);
- have any employees, distributors, sales representatives or agents in the State of Massachusetts (Cohen Decl. ¶ 7);
- have any employees, distributors, sales representatives or agents outside of the State of Massachusetts who are authorized to conduct business within the forum (Cohen Decl. ¶ 7);
- maintain an office in the State of Massachusetts (Cohen Decl. ¶ 7);
- have any telephone numbers or facsimile numbers listed in the State of Massachusetts, nor does it have an answering or message service in the State of Massachusetts (Cohen Decl. ¶ 7);
- have any mailing addresses in the State of Massachusetts (Cohen Decl. ¶ 7);
- have any trans-shipment points in the State of Massachusetts (Cohen Decl. ¶ 7); or
- have any bank accounts in the State of Massachusetts (Cohen Decl. ¶ 7); and
- Global employees do not regularly travel to the State of Massachusetts—no Global employee has visited the state of Massachusetts in 26 years (Cohen Decl. ¶ 7).

Global's only contact with the forum are two isolated sales to residents of Massachusetts. (Cohen Decl. ¶ 7). As the Supreme Court suggested in *World Wide Volkswagen Corp. v. Woodson*, isolated sales are not sufficient to render a defendant subject to suit in a foreign jurisdiction. *See World Wide*, 444 U.S. 286, 297, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980). Thus, Global too lacks sufficient contacts with the forum for this Court to exercise jurisdiction.

8

### C. No Cause Of Action For Trademark Infringes Arises As Against Cohen Because She Has No Contacts With Massachusetts.

Addressing the second prong of the test, the Court must next decide whether Gucci's cause of action arises out of Cohen's contacts with Massachusetts. *Phillips Exeter Acad.*, 196 F.3d at 288. Here, it is axiomatic that because Cohen has no contacts with Massachusetts, Gucci's alleged causes of action, at least as against Cohen, cannot arise in this forum.

### D. Exercising Jurisdiction Over Cohen Would Be neither Reasonable Nor Fair

As a preliminary matter, Cohen notes that the First Circuit has adopted a sliding scale approach in accessing unreasonableness. That is the First Circuit requires defendants to make less of a showing to establish unreasonableness when the plaintiffs showing of minimum contacts is weak. *Ticketmaster-New York v. Alioto*, 26 F.3d 201, 210 (1st Cir. 1994) (showing of minimum contacts was frail enough to be overcome by defendant's inconvenience in litigating in the forum).

As described above, Cohen completely lacks any contacts with Massachusetts upon which jurisdiction may be predicated. Moreover, Gucci has provided no specific facts in its pleadings, nor can Gucci provide any such facts, which contradict the evidence of lack of contacts presented by Cohen. Thus, an exercise of jurisdiction is not proper on the facts here. However, even if the Court were to entertain exercising jurisdiction, said exercise would be neither reasonable nor fair for the following reasons:

#### 1. The Burden of Forcing Cohen To Defend in Massachusetts Is Unreasonable

Cohen's sole residence is in Marina Del Rey, California. (Cohen Decl. ¶ 2.) Cohen does not regularly travel to Massachusetts for either business or personal reasons. In-fact, Cohen has not visited Massachusetts in 20 years. (Cohen Decl. ¶ 6.) All

documentary evidence that may regard Cohen is located in California. (Cohen Decl. ¶ 10.) The witnesses Cohen may call to establish her defenses in this litigation are third party witnesses (namely employees of CityModa and Metro, and Ben Sheen the owner of the same in particular) all of whom reside in California—none reside in Massachusetts. (Cohen Decl. ¶ 8.) Moreover, these witnesses are likely not to voluntarily appear Massachusetts. (*Id.*) With these critical witnesses being beyond the subpoena power of this Court, Cohen is likely to incur substantial prejudice in defending the claims against her.

Moreover, Cohen is an individual who can ill afford the costs of trademark infringement litigation. (Cohen Decl. ¶ 9.) The costs of defending against Gucci's lawsuit will impose severe financial hardship on Cohen. (*Id.*) The costs of paying travel and lodging expenses to attend hearings in Massachusetts, and any additional costs, such as transporting documentary evidence to Massachusetts, will substantially increase Cohen's costs. (*Id.*) Such costs are will impair Cohen's ability to defend herself against Gucci's claims. (*Id.*)

Gucci by contrast is large and well-funded corporation which can readily afford to litigate in any judicial district. Requiring Gucci to prosecute this lawsuit in California likely imposes minimal or no burden on Gucci as evidenced by the fact that Gucci is presently litigating no less than seven (7) lawsuits in the Central District of California alone.[3] Arguably, given the speculative nature of Gucci's claims and the paucity of any facts that would establish that Cohen would be anything more than an innocent infringer if Gucci's claims are ultimately proven to be true, equity demands that Gucci be required to prosecute this lawsuit in California.

---

[3] Gucci is presently litigating at least the following lawsuits in the Central District of California: *Gucci v. Jaffer*, Case No. CV 05-00705, filed Jan. 28, 2005; *Gucci v. Pieta*, Case No. CV 05-00386, filed Jan. 18, 2005; *Gucci v. Moonlight*, Case No. CV 04-09626, filed Nov. 24, 2004; *Gucci v. Mandarine*, Case No. CV 04-09625, filed Nov. 24, 2004; *Gucci v. Forever Spiga*, Case No. CV 04-09621, filed Nov. 24, 2004; and *Gucci v. Riena*, Case No. CV 04-09620, filed Nov. 24, 2004. (*See* Cohen Decl. ¶ 6.)

2. **California Has A Greater Stake In The Outcome Of This Litigation Than Massachusetts**

California has a substantial interest in protecting its residents from unwarranted claims of trademark infringement. *See, Deprenyl Animal Health, Inc. v. The University of Toronto Innovations Foundation*, 297 F.3d 1343, 1356 (Fed. Cir. 2002). Moreover, California has a greater stake in the outcome of this litigation. The financial health and welfare of one its citizens is at stake in this case as is the very survival of a California Limited Liability Company. By contrast, Gucci has plead no facts that would indicate that the Commonwealth of Massachusetts possesses any particular interest in the outcome of this litigation.

## VIII.

### VENUE IS IMPROPER HERE

That relevant venue statute, 28 U.S.C. § 1391(b), provides in pertinent part that: "[a] civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides[4] ... (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred ... or (3) a judicial district in which any defendant may be found if there is no district in which the action may otherwise be brought." Here, venue is not proper in this District under any of the three subsections of the venue statute.

Venue is improper under subsection (1), because Cohen is not subject to personal jurisdiction in this District, as discussed at length above. Nor can venue be exercised

---

[4] Under Section 1391(c), "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."

under subsection (2), because, from the discussion above, it is clear that no "substantial part of the events or omissions giving rise to the claim" occurred in Massachusetts. Finally, Cohen cannot be "found" in Massachusetts pursuant to subsection (3), since she is not a resident of the forum. (Cohen Decl. ¶ 2.)

Because venue is not proper in Massachusetts, the Court should dismiss this lawsuit pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a)(requiring a court to dismiss or transfer a case filed in the wrong venue).

## IX.

## IF THE COURT IS NOT INCLINED TO DISMISS, VENUE SHOULD BE TRANSFERRED TO THE CENTRAL DISTRICT OF CALIFORNIA

The federal change of venue statute provides that: "For the convenience of the parties and witnesses, and in the interest of justice, a district court may transfer any civil action to any other district or division in which it may have been brought." 28 U.S.C. § 1404(a).

### A. Venue is Proper in the Central District of California

Section 1404(a) provides that a case may be transferred only to a district where the action might have been brought. *Coady v. Ashcraft & Gerel*, 223 F.ed 1, 11 (1st Cir. 2000). It is undisputed that Cohen resides in Marina Del Rey, California, thus the Central District of California is a district where the action could have been brought.

### B. First Circuit Transfer of Venue Standard

"Section 1404(a) is intended to place discretion in the District Court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S. Ct. 2239 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S. Ct. 805 (1964)). A determination of venue under § 1404(a) lies in the sound discretion of the

12

district court. *Cianbro Corp. v. Curran-Lavoie*, 814 F.2d 7, 11 (1st Cir. 198). The factors which the court considers are the convenience of the parties and witnesses, and the interest of justice. *Coady v. Ashcraft & Gerel*, 223 F.3d 1, 11 (1st Cir. 2000); 28 U.S.C. § 1404(a). There is a presumption in favor of plaintiff's choice of forum and the defendant has the burden of showing that transfer is warranted. *Berrigan v. Greyhound Lines, Inc.*, 560 F.Supp. 165, 169 (D.Mass. 1982).

### 1. Convenience Of The Parties Weighs Strongly In Favor Of Transferring Venue To The Central District Of California.

Cohen's sole residence and place of employment is located in Marina Del Rey, California. (Cohen Decl. ¶ 2.) Cohen does not routinely travel to Massachusetts for either personal or business reasons. (Cohen Decl. ¶ 6.) In-fact, Cohen has not visited Massachusetts in 20 years. (*Id.*) Moreover, most, if not all significant discovery will be based in California. (Cohen Decl. ¶ 10.) In addition, the third party witnesses that Cohen will desire to call in this case are residents of California and are known to be unlikely to voluntarily appear in Massachusetts. (Cohen Decl. ¶ 8.) Cohen has no offices, agents, representatives or friends or family in Massachusetts by which the burden of being forced to litigate in that distant forum may be eased. (Cohen Decl. ¶ 6.).

Given Cohen's complete lack of any "presence" in Massachusetts, requiring her to defend in that forum, 3000 miles from her home, imposes an undue financial burden which is likely to severely prejudice her ability to defend herself from unwarranted and speculative claims of trademark infringement.

By contrast, requiring Gucci, a large and well-funded corporation, to prove its claims in the Central District of California, a forum well known to Gucci and in which Gucci is presently litigating at least the following seven (7) cases: *Gucci v. Jaffer*, Case No. CV 05-00705, filed Jan. 28, 2005; *Gucci v. Pieta*, Case No. CV 05-00386, filed Jan. 18, 2005; *Gucci v. Moonlight*, Case No. CV 04-09626, filed Nov. 24, 2004; *Gucci v. Mandarine*, Case No. CV 04-09625, filed Nov. 24, 2004; *Gucci v. Forever Spiga*, Case

No. CV 04-09621, filed Nov. 24, 2004; and *Gucci v. Riena*, Case No. CV 04-09620, filed Nov. 24, 2004; imposes little if any additional burden on plaintiff. (Cohen Decl. ¶ 11.) Beyond doubt, Gucci can and does litigate in the Central District of California with ease. In view of the above, convenience of the parties weighs heavily in favor of transferring venue to the Central District of California.

### 2. All Of Cohen's Witnesses Are In California—Beyond The Subpoena Power Of Massachusetts

As stated above, all Cohen's likely witnesses are third party witnesses (i.e. employees of CityModa and Metro and the principle of those entities Ben Sheen) all of whom, to the best of Cohen's knowledge reside in California beyond the subpoena power of this Court. (Cohen Decl. ¶ 8.) Cohen expects that many such non-party witnesses may prove to be critical to her defense. (*Id.*) Cohen also expects that most such witnesses will prove unwilling to voluntarily appear in Massachusetts. (*Id.*) In the event such witnesses may be willing to travel to Massachusetts, Cohen can ill-afford to pay their transportation and lodging expenses. (Cohen Decl. ¶ 9.) More importantly, unless Cohen is able to compel the appearance of her expected non-party witnesses, her defense will be unduly and unfairly prejudiced.

### 3. The Interests Of Justice Favor Transfer To The Central District Of California.

Federal trademark rights exist throughout the United States. Thus, no particular forum is more or less favorable to Gucci based on the nature of the right asserted. Moreover, Massachusetts has no particular interest in enforcing the trademark rights of a New York corporation, like Gucci, against an individual resident of California, like Cohen. This is particularly true, where, like here, Cohen has absolutely no contacts with Massachusetts. California by contrast has a stronger, more direct interest in the outcome of a trademark infringement case against a California citizen where most, if not all, of the

witnesses and documentary evidence are located. See, Jarvis v. Marrieta Corp., 1999 U.S. Dist. LEXIS 12659 at *19 (N.D. Cal. Aug. 12, 1999) (holding that where plaintiff and defendant are from different districts, district where documentary evidence, witnesses, and actions at issue are located has a greater local interest in the controversy).

Furthermore, Massachusetts' stake in the outcome of the litigation as a whole is negligible given Global's mere two isolated sales in the forum. (Cohen Decl. ¶ 7.) By contrast, this lawsuit imperils the financial health and well being of a California citizen and imperils the very existence of a California limited liability company. Thus, the interests of justice factor also weighs strongly in favor of transfer.

This Court should exercise its discretion and transfer this case to the Central District of California because all of the factors the Court must balance, namely, (1) convenience of the parties, (2) convenience of the witnesses, and (3) the interests of justice, weigh heavily in favor of such a transfer.

## X.
## CONCLUSION

For all of the foregoing reasons, the Court should grant defendant Cohen's motion to dismiss, or in the alternative, should transfer venue to the Central District of California. Cohen also respectfully requests that the Court *sua sponte* dismiss the action as against Global for lack of personal jurisdiction.

Respectfully submitted,

Dated: February 18, 2005

Leslie Cohen
13900 Tahiti Way, Apt. 117
Marina Del Rey, California 90292

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing Memorandum of Points and Authorities In Support of Defendant's Motion to Dismiss, Or, in the Alternative, to Transfer Venue is being deposited with the United States Postal Service on February 18, 2005, in an envelope addressed to counsel for plaintiff, Gucci America, Inc.:

> Mark Schonfeld
> Burns & Levinson, LLP
> 125 Summer Street
> Boston, MA 02110